T.C. Summary Opinion 2006-178


UNITED STATES TAX COURT



KATHERINE ILOVAR RODRIGUEZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16172-05S.                    Filed November 2, 2006.


Katherine Ilovar Rodriguez, pro se.

<u>Tamara L. Kotzker</u>, for respondent.



DEAN, <u>Special Trial Judge</u>:  This case was heard under the

provisions of section 7463 of the Internal Revenue Code as in

effect when the petition was filed.  Unless otherwise indicated,

subsequent section references are to the Internal Revenue Code of

1986, as amended.  The decision to be entered is not reviewable

by any other court, and this opinion should not be cited as

authority.

The petition in this case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination). Pursuant to section 6330(d), petitioner seeks review of respondent's proposed levy action with respect to her income tax liabilities for 1993, 1994, and 1995. The issue for decision is whether respondent's determination to proceed with collection action was an abuse of discretion.

## Background

The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition was filed, petitioner resided in New York, New York.

### Earlier Contact With the Internal Revenue Service

Petitioner failed to timely file her tax returns for 1993, 1994, and 1995, and she filed them without full remittance. In addition to the years under consideration, petitioner has unpaid tax liabilities for the period 1988 through 1992. Over several years, beginning in 1994, petitioner submitted nine offers-in-compromise (OIC) which were rejected for one reason or another. Petitioner feels that many employees of the Internal Revenue Service (IRS) with whom she came into contact were insulting, incompetent, or "threatening".

Appeals Conference in 2003

In December of 2001 petitioner submitted her last OIC, along with a request for abatement of penalties and interest. The OIC and the request for abatement were rejected. The OIC was rejected because it was determined that petitioner had sufficient assets to fully pay her outstanding tax liabilities. Petitioner appealed the rejection, and the appeal was assigned to an Appeals team located in New York, New York. The Appeals team included a settlement officer, Gilbert Breitberg, and a team manager, John O'Dea. In May 2004 the Manhattan Appeals team rejected the OIC as well as petitioner's request for abatement of interest and penalties.

In December 2003, while the Manhattan Appeals team was considering petitioner's requests, petitioner wrote a check for $35,000 to the U.S. Treasury for "Payment for taxes: 1988, 1989, 1990, 1991, 1992, 1993, 1994, 1995". Petitioner sent the check despite her conclusion that when she offered to pay the taxes during a meeting with Messrs. Breitberg and O'Dea, the Appeals team paid "no mind to our presentation". Initially, respondent applied the check to the earliest taxes, including penalties and interest.[1] Petitioner wrote to respondent to complain that the $35,000 was intended to be applied solely against her outstanding

---

[1]Except with reference to deficiency procedures, under sec. 6601(e)(1), Interest Treated as Tax, references to underpaid "tax" include interest on the tax. The term "tax" also includes additions to the tax, additional amounts, and penalties. Sec. 6665(a)(2).

"taxes", not interest and penalties. The funds were reapplied against the unpaid tax assessed for each year, leaving unpaid the interest and penalties for each year.

Petitioner found the settlement officer to have been unfair, discourteous, biased, and unprofessional, displaying an "attack dog mentality".

Notice of Intent To Levy

Respondent issued to petitioner for 1993, 1994, and 1995 a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, dated July 10, 2004. The letter advised petitioner that the total amount due was $7,973.35. Petitioner timely filed her Form 12153, Request for a Collection Due Process Hearing, under section 6330. Petitioner stated that she did not agree with the collection action because "The taxes for 1993, 1994, 1995 have been paid." She attached to the request a copy of the check for $35,000 dated December 2003.

Settlement Officer Carol Berger of the Manhattan office of Appeals responded by letter to petitioner's request for a hearing under section 6330. Petitioner replied, strongly objecting to having her case heard in the same Manhattan Appeals Office where Mr. Breitberg, who had considered and rejected her OIC and her request for abatement, was working.

Petitioner's request for a section 6330 hearing was reassigned from the Manhattan Appeals Office to the Appeals Office in Hempstead, New York. Settlement Officer Elissa

Dellosso of the Hempstead Appeals Office sent petitioner a letter describing, on the basis of the case history, the expected scope of the hearing and what petitioner would be required to show in order to avoid the proposed collection action.  Petitioner replied by letter; she stated that she was "disturbed by the way you have continued to be abusive to us taxpayers in the tone and content of your letter."  She also stated that it was clear from the letter that "you are working with Mr. Breitberg and you are going to be unfair, partial, and abusive in dealing with our case."  Respondent refused to further reassign petitioner's case.

Notice of Determination

Respondent issued a notice of determination to petitioner, finding that she had failed to raise a relevant issue under section 6330 and had failed to offer an acceptable alternative to the proposed collection action.

### Discussion

Section 6330

Section 6330 generally provides that the Commissioner cannot proceed with collection by way of a levy until the taxpayer has been given notice and the opportunity for an administrative review of the matter (in the form of an Appeals Office hearing), and that, if dissatisfied, the taxpayer may obtain judicial review of the administrative determination.  See Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).  The taxpayer requesting the hearing may

raise any relevant issue with regard to the Commissioner's intended collection activities, including spousal defenses, challenges to appropriateness of the collection action, and the offers of collection alternatives. Sec. 6330(c); see Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, supra at 180-181.

Where the validity of the tax liability is not properly part of the appeal, the Court reviews the determination of the Appeals officer for abuse of discretion. Sego v. Commissioner, supra at 609-610; Goza v. Commissioner, supra at 181-182.

The taxpayer may raise challenges "to the existence or amount of the underlying tax liability", however, only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B).

Petitioner's View of the Case

At trial, petitioner testified that Ms. Dellosso "violated my due process rights by refusing to give me an opportunity to be heard and have an accountant present so that we could present appropriate collection alternatives." Petitioner testified that Ms. Dellosso was "impatient, abusive, capricious, argumentative," and did not properly consider her case. Petitioner asked that Ms. Dellosso be "called to task" by the Court. Petitioner testified that she wanted the Court to decide that her due process rights had been violated by Ms. Dellosso.

Petitioner then stated that she wanted to "settle" the case immediately. When asked by the Court what she meant by using the word "settle", she explained that she wanted to pay the subject amounts in full. She said she wanted to "concede" the case. She testified that she had offered several times to fully pay the outstanding amounts. According to petitioner, she made an offer to Ms. Dellosso to fully pay the taxes for 1993, 1994, and 1995 but was rebuffed. Petitioner stressed that her offer to pay in full was limited to the tax years before the Court.

Petitioner, while insisting that she wanted to "concede" her case, nevertheless wanted her husband to testify, which testimony the Court allowed. Petitioner's husband testified that the telephone communications among himself, petitioner, and Ms. Dellosso were unpleasant. He also testified that Ms. Dellosso refused to accept full payment for 1993, 1994, and 1995 and refused to extend the time for a hearing so that their accountant could be present.

Evidence of Respondent's View

Ms. Dellosso was not called by either party to testify at the hearing in this case. The parties, however, stipulated as an exhibit a copy of her case activity records (case records). As one might guess, Ms. Dellosso's view of their interaction was different from petitioner's. According to the case records, on the first occasion Ms. Dellosso spoke with petitioner by telephone, petitioner was "irate and obnoxious" and "extremely

rude and arrogant", and she "ranted and raved" at her. But petitioner did, eventually, request a conference.

Ms. Dellosso, according to the case records, advised petitioner by a telephone message that petitioner was required to submit a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and proof of income and expenses. Ms. Dellosso informed petitioner that her check for $35,000 had not fully paid her tax liabilities. She informed petitioner that she had set aside both July 7 and 12, 2005, at 10 a.m. as alternative dates for a conference. Receiving no response to her telephone message, Ms. Dellosso telephoned petitioner again and left another message stating that if petitioner failed to appear by the July 12, 2005, appointment, Ms. Dellosso would issue her determination.

The case records indicate that petitioner responded to the second telephone message. She asked by telephone that the hearing be postponed until July 19, 2005. Petitioner stated that she wanted the interest and penalties abated and wanted to "settle" the case. Ms. Dellosso and her supervisor, who was also on the line, informed petitioner that no OIC or installment agreement could be accepted unless all unpaid years were included. At this point, according to the case records, petitioner began "shouting hysterically", refusing to let Ms. Dellosso speak. Ms. Dellosso terminated the telephone call.

Petitioner did not appear at the date and time Ms. Dellosso had set for a meeting with petitioner, July 12, 2005, at 10 a.m. About 2 hours after the time of the appointment, petitioner called Ms. Dellosso and stated that she was unable to make the appointment.  Petitioner asked for an opportunity to speak to her accountant and was given 2 days to do so.

Petitioner called Ms. Dellosso 2 days following the canceled appointment, stated that she had been unable to contact her accountant, and requested an installment agreement only for 1993 through 1995.  According to the case records, Ms. Dellosso informed petitioner that although she could pay what she wanted, all years had to be included in either an installment agreement or an OIC.  Ms. Dellosso terminated the call after an unpleasant exchange of words.

The notice of determination was issued on July 27, 2005.

The Issue for the Court

The underlying tax liabilities are not at issue in this case.[2]  The issue for the Court to decide is whether respondent abused his discretion in determining to pursue the intended collection action.

---

[2]Petitioner conceded at trial the underlying tax liabilities and with them the abatement of interest and penalties raised in the petition.  See sec. 6201; supra note 1.  Had petitioner not conceded the issues, she would be precluded from raising them. See sec. 6330(c)(2)(B); sec. 301.6320-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

An abuse of discretion is a decision that: (1) Rests on an error of law or a clearly erroneous factual finding, or (2) a decision not necessarily the product of legal error or a clearly erroneous finding of fact but nevertheless is outside the range of permissible decisions. Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001).

Petitioner argued at trial that she was not given a hearing at which she could be heard and have her accountant present. But petitioner was offered two alternative dates for a hearing and a 2-day extension after she failed to appear at the hearing on the second alternative date. Petitioner failed to request or make an appointment between the 2-day extension and the issuance of the notice of determination.

Once a taxpayer has been given an opportunity for a hearing but fails to avail herself of that opportunity, the Appeals officer may proceed in making a determination by reviewing the case file. See Mann v. Commissioner, T.C. Memo. 2002-48; sec. 301.6330-1(d)(2), Q&A-D7, Proced. & Admin. Regs. When petitioner did not appear for the hearing, Ms. Dellosso reviewed petitioner's case file and considered the sole issue raised by petitioner in her request for a hearing, that she had "paid the tax". After the review, respondent issued the notice of determination.

Petitioner alleges that she offered to pay the tax in full, certainly a viable collection alternative, and the settlement

officer refused to accept it.  The case records indicate that Ms. Dellosso refused to accept an installment agreement restricted to the years for which petitioner had requested a section 6330 hearing, but advised petitioner that she could pay what she wanted to pay.  The case records also note that petitioner had not provided a Form 433A disclosing her financial information.

Ms. Dellosso's position on the installment agreement, as recorded in the case records, is in accord with pertinent provisions of the Internal Revenue Manual (IRM).  See IRM sec. 5.14.2.2, sec. 5.14.1.5.1.  The Court has generally upheld collection determinations made by the Commissioner in accord with the IRM.  See Etkin v. Commissioner, T.C. Memo. 2005-245 (and cases cited therein).

Petitioner has some prior experience in dealing with the IRS, unpleasant though it may have been.  Had petitioner wanted to fully pay the outstanding liabilities for the 3 years at issue here, she could have done so just as she did in making the earlier $35,000 payment.  If she has not done so already, she may yet choose to pay the liabilities.

## Conclusion

Because petitioner did not present viable alternatives to collection, the Court finds that respondent's determination to pursue the intended collection action was not an abuse of discretion.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.